# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HENRY F SIEDZIKOWSKI,**<br>**MARY RITA SIEDZIKOWSKI,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | **NO. 22-3369** |
| **DEANNE B. CRISWELL, IN HER**<br>**CAPACITY AS ADMINISTRATOR OF**<br>**FEMA; ADMINISTRATIVE**<br>**STRATEGIES, LLC,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiffs Henry and Mary Siedzikowski assumed a flood insurance policy insured by the Federal Emergency Management Agency ("FEMA") from the previous owners of their home near the Schulykill River.  The policy, which is FEMA's Standard Flood Insurance Policy ("SFIP"), provides coverage for property damage incurred during flooding and sets forth requirements for insureds to follow in filing loss claims with FEMA.

The instant suit arises from loss claims Plaintiffs sent to FEMA following damages to their home in 2021 caused by flooding during Hurricane Ida.  Defendants are Deanne Criswell, in her capacity as Administrator of FEMA, and Administrative Strategies, LLC, a claims servicing firm retained by FEMA to adjust Plaintiffs' loss claims.  Plaintiffs sue Criswell for breach of contract, claiming that FEMA failed to fully reimburse them for the full extent of losses covered by their SFIP.  Plaintiffs further bring claims of intentional and/or negligent

misrepresentation and negligence against Administrative Strategies, asserting that Administrative Strategies made misrepresentations regarding their policy coverage and failed to reasonably investigate and report the extent of damages to their property.

Defendants each move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims brought against them for failure to state a claim.  For the reasons below, Defendants' motions to dismiss will both be granted.

## I.   FACTUAL BACKGROUND[1]

Plaintiffs Henry and Mary Siedzikowski reside in Montgomery County, Pennsylvania along the Schuylkill River.  In late August 2021, Hurricane Ida hit Montgomery County, and significant flooding ensued.  Waters flooded into the lower level of Plaintiffs' house during the storm, and, when the waters receded, Plaintiffs discovered damage to, *inter alia*, their drywall and insulation, windows, interior doors and frames, and electrical fixtures.  Plaintiffs retained non-party Service Master to begin cleaning up the property.

About a week after the storm, Plaintiffs were contacted by Brian Papierniak of Administrative Strategies.  Administrative Strategies is a claims servicing firm headquartered in Indiana that was retained by FEMA to be the adjuster on Plaintiffs' flood loss claims.  Papierniak contacted Plaintiffs to assess the damage to their property.  He soon came to Plaintiffs' property and, Plaintiffs allege, made the following false representations: "he was there to make sure all of their damages under the Flood Insurance Policy were fully covered"; "that Service Master was trying to 'rip them off,' since drying was not covered under the Policy"; "that he would prepare a

---

[1] The factual background is drawn from Plaintiffs' Second Amended Complaint and the exhibits attached to the Complaint as well as the exhibits attached to Defendants' motions to dismiss and Plaintiffs' responses to the motions to dismiss.  All of the exhibits relied upon are "integral to or explicitly relied upon in the complaint" and can thus be considered without transforming the motions to dismiss into motions for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Proof of Loss within 10 days so repairs could start"; and "if anything was missed, Plaintiffs should send it to him so it could be added to the Initial Proof of Loss."

Relying on these representations, Plaintiffs "confronted Service Master, who promptly walked off the job." Plaintiffs subsequently struggled to find others to conduct the clean-up.

In the coming weeks, Plaintiffs noticed that their interior wooden steps were warping and mold was forming in the insulation in their foyer. They contacted Papierniak, who "eventually admitted . . . that drying was covered to prevent those occurrences." While Plaintiffs then arranged for drying equipment, "it was not in time to save the steps or the dry wall and insulation."

Papierniak produced a proof of loss, to which Plaintiffs responded with a list of perceived deficiencies in the items covered. Papierniak responded he had "already forwarded it to NFIP without waiting to hear from Plaintiffs, so that [P]laintiffs would have to contact NFIP directly." Accordingly, Plaintiffs sent a letter to FEMA on December 15, 2021 objecting to Papierniak's prepared proof of loss. Attachments to the letter include an email Plaintiffs sent to Papierniak with a list of a "substantial number of items of loss" left out of Papierniak's prepared proof of loss as well as multiple invoices related to the repair work on the property. The letter states that "[b]oth insured and uninsured losses are estimated at over $400,000.00." The letter is signed only with a typewritten signature, reading "/s/ Henry F. Siedzikowski." It is not notarized.

Nonetheless, Henry Siedzikowski ultimately signed a proof of loss statement on January 24, 2022 in which the Plaintiffs sought loss reimbursement in the amount of $127,039.44. Plaintiffs otherwise "heard nothing" regarding the December letter until February 2, 2022, when they received a letter from FEMA approving the first proof of loss in the amount of $131,771.47 (consisting of $128,289.44 minus a $1,250 deductible and plus recoverable depreciation of

$4,732.03).  This amount is slightly greater than the net amount claimed by Plaintiffs ($127,039.44).  Plaintiffs maintain that FEMA's February approval letter "fully adopted Mr. Papierniak's deficient Proof of Loss and ignored all of the supplemental information provided, except for denials of coverage for the movement of the pipes and water heaters, and new cracks in the foundation walls, which they alleged their structural engineer said was the result of historical subsidence, but still did not provide the engineer's report."[2]  By "supplemental information," Plaintiffs appear to be referring to the deficiencies noted in their December 2021 letter.

On March 24, 2022, Plaintiffs filed an appeal to FEMA regarding the denial of claims for the movement of pipes and additional cracking.  FEMA ultimately denied the appeal on September 1, 2022.

In the meantime, Plaintiffs continued to pursue reimbursement in respect to the perceived deficiencies, and on June 1, 2022, Henry Siedzikowski signed another proof of loss submitted to FEMA, this time seeking an additional $27,254.06.  On June 17, 2022, Plaintiffs received a letter from FEMA approving an additional amount of $28,597.48.  This is slightly more than the net amount claimed by Plaintiffs in their second proof of loss statement ($27,254.06).

In sum, FEMA paid a total amount of $160,368.95 between the two proof of loss statements submitted by or on behalf of Plaintiffs.  But Plaintiffs state they have spent "in excess of $200,000 for repairs that were supposed to be covered by the Flood Insurance Policy" and

---

[2] Plaintiffs appear to be responding to the following language in the February 2 approval letter:

We have received and reviewed the engineer's report regarding the additional damage that you are claiming to your insured property.  The engineer tells us in his report the movement of pipes and water heaters as well as the cracking in the foundation walls were caused by historical land subsidence.  The SFIP specifically excludes this type of damages.  Therefore, we are unable to make a payment for these damages and this portion of your claim is denied.

seek further reimbursement.

## II.   LEGAL STANDARDS

Defendants each move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil

Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to

the plaintiff," with the question being "whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a

determination is made as to whether those facts state a "plausible claim for relief."  *Id.* at 210-11.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits

attached to the complaint, matters of public record, as well as undisputedly authentic documents

if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223,

230 (3d Cir. 2010).  A court may consider a document "*integral to or explicitly relied upon* in the

complaint" without converting a motion to dismiss into one for summary judgment.  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation and

citation omitted).

In accordance with these precepts, the Court relies upon the following documents:

Plaintiffs' SFIP with FEMA, which is attached to Plaintiffs' Second Amended Complaint; the

February 2, 2022 FEMA approval letter, approving a net amount of $131,771.47, which is

attached to Defendant Criswell's Motion to Dismiss; Plaintiff's two proof of loss statements,

signed on January 24 and June 1, 2022, which are also attached to Defendant Criswell's Motion

to Dismiss; and the June 17, 2022 FEMA approval letter, approving a net amount of $28,597.48,

which is attached to Plaintiffs' Opposition to Defendant Criswell's Motion to Dismiss.  There is

no dispute that each document is either integral to or explicitly relied upon by Plaintiffs' Second

Amended Complaint.

## III.    DISCUSSION

### A.  FEMA

FEMA administers the National Flood Insurance Program ("NFIP"), established by the

National Flood Insurance Act of 1968 ("NFIA"), codified, as amended, at 42 U.S.C. § 4001, *et*

*seq.  See Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 807 (3d Cir. 2005).  Under NFIA,

FEMA may issue flood insurance policies and sets the terms of the Standard Flood Insurance

Policy (SFIP), which is codified at 44 C.F.R. pt. 61, app. A(1) ("Dwelling Form") and is

incorporated into the Code of Federal Regulations by reference at 44 C.F.R. § 61.13(a).  *See*

*Suopys*, 404 F.3d at 807.  Issued SFIPs generally must be identical to the form codified at 44

C.F.R. pt. 61, app. A.  *Migliaro v. Fid. Nat'l Indem. Ins. Co.*, 880 F.3d 660, 662 (3d Cir. 2018).

Interpretation of the SFIP is governed by federal common law, and the SFIP is construed in

accordance with its plain, unambiguous meaning.  *Suopys*, 404 F.3d at 809.

The SFIP sets forth requirements for proof of loss statements in support of insurance

claims pursuant to the policy, and the requirements are "[s]trictly construed."  *See id.* at 810.  In

other words, "[s]trict adherence to the proof of loss requirement is a prerequisite to recovery

under the SFIP."  *Stone v. Franklin Homeowners Assur.*, 2014 WL 2860830, at *3 (M.D. Pa.

June 23, 2014) (citing *Suopys*, 404 F.3d at 810 (listing cases)).  Plaintiffs' SFIP states in relevant

part (Article VII.J):

> In case of a flood loss to insured property, you must:
> . . .
> 4. Within 60 days after the loss, send us a proof of loss, which is your *statement of the amount you are claiming* under the policy *signed and sworn to by you*, and which furnishes us with the following information: [list of information omitted]
> . . .
> 5. In completing the proof of loss, you must use your own judgment concerning the *amount of loss and justify that amount*.

(emphasis added).  Furthermore, the SFIP limits suits against FEMA (Article VII.R.) as follows: "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy."

Plaintiffs do not allege that FEMA failed to compensate them for the full amount claimed in the two proof of loss statements submitted to FEMA and signed by Henry Siedzikowski on January 24 and June 1, 2022.  Instead, they allege that FEMA failed to fully compensate them in respect to the full extent of loss claimed in the December 2021 letter sent to FEMA.  In other words, Plaintiffs contend that the December 2021 letter serves as a valid proof of loss—indeed, characterizing it as a "Supplemental Proof of Loss"—for which they have not been compensated.

Plaintiffs' December 2021 letter does not meet the proof of loss requirements under the SFIP in two respects.  First, it is not "sworn to" by Plaintiffs.  While the term "sworn" is not defined in the SFIP, it has been routinely interpreted as requiring notarization or something beyond a signature.  *See Uddoh v. Selective Ins. Co. of Am.*, 2014 WL 7404540, at *5 (D.N.J. Dec. 29, 2014) (listing cases); *see also Stone*, 2014 WL 2860830, at *3 (granting summary judgment where "proof of loss" was not "signed or sworn to" by the insureds); *Hagstotz v. Nationwide Mut. Ins. Co.*, 2018 WL 5005000, at *4 (D.N.J. Oct. 16, 2018) (granting summary judgment where proof of loss was "not sworn by virtue of being notarized"); *Jacobsen v. Hartford Ins. Co. Flood & Home (Sandy)*, 2017 WL 1239145, at *11 (D.N.J. Mar. 31, 2017)

(granting summary judgment on basis proof of loss was deficient where not "signed and sworn as required under the SFIP").  Plaintiffs' December 2021 letter is not notarized and is not otherwise "sworn" to.  Instead, the letter only features the typewritten signature of Henry Siedzikowski.

Second, the December 2021 letter submitted by Plaintiffs does not include the specific amount they seek reimbursement for under the policy.  *See Uddoh v. Selective Ins. Co. of Am.*, 772 F. App'x 29, 32 (3d Cir. 2019) ("By failing to clearly indicate the amount that he was seeking to recover, [plaintiff's] proof of loss did not comply with the SFIP requirements."). Instead, the letter merely states that "[b]oth insured and uninsured losses are estimated at over $400,000.00."  While the letter attaches various invoices for repair work done on Plaintiffs' property, Plaintiffs do not clearly indicate a total, specific amount claimed under their policy. This does not meet the SFIP's requirement of a "statement of the amount [insureds] are claiming under the policy" and the "amount of loss and justif[ication of] that amount."

Accordingly, Plaintiffs' December 2021 letter is not a valid proof of loss under the SFIP. The "law does not excuse [Plaintiffs] from complying with the SFIP's requirements."  *Petersen v. Nat'l Flood Ins. Program*, 200 F. Supp.2d 499, 506 (E.D. Pa. 2002).  Because Plaintiffs have received the full amount sought by their two valid proof of loss statements and do not have any other valid proof of loss, they fail to demonstrate a breach of the SFIP by the FEMA Defendant.[3] Plaintiffs do not allege there is any other potential proof of loss statement.  On that basis, Count I

---

[3] Plaintiffs also briefly argue that because FEMA acknowledged receipt of the December 2021 letter in other communications with Plaintiffs and those communications did not assert that the December 2021 letter "was either untimely or otherwise in violation of the applicable regulations," then somehow their breach of contract claim can proceed.  Generously construing the argument, Plaintiffs appear to contend that FEMA has somehow waived the SFIP proof of loss requirements based on subsequent communications.  In that Plaintiffs provide no legal argument in support of this theory the argument is not properly raised with the Court and will not be addressed.  *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before [the] court." (citation omitted)).

must be dismissed with prejudice, and, accordingly, the entire case against Defendant Criswell.

### B.  Administrative Strategies

Administrative Strategies moves to dismiss Plaintiffs' state law claims against it—
negligent and/or intentional misrepresentation and negligence (Counts II & III)—on the grounds
that state law claims "based on the handling and disposition of SFIP claims" are preempted by
federal law under NFIA and the SFIP.

Federal preemption of state law claims can occur under one or more theories: express
preemption, field preemption (also referred to as "implied preemption"), and conflict
preemption.  *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 269 (3d Cir. 2004) (citing
*Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 222 (3d Cir. 2001)).

Here, Plaintiffs' SFIP expressly preempts Plaintiffs' state law claims of negligence and
intentional/negligent misrepresentation against Administrative Strategies.  The SFIP provides in
relevant part (Article IX):

> This policy and all disputes arising from the handling of any claim under the
> policy are governed exclusively by the flood insurance regulations issued by
> FEMA, the National Flood Insurance Act of 1966, as amended (42 U.S.C. 4001,
> et seq.), and Federal common law.

This unambiguous language expressly preempts state law claims related to the "handling
of any claim" under Plaintiffs' SFIP.  *See Sutor v. F.E.M.A.*, 2009 WL 2004375, at *5 (E.D. Pa.
July 9, 2009) ("[T]he language of the regulation stating that disputes arising from the handling of
SFIPs are governed 'exclusively' by FEMA serves to expressly preempt state law claims.").
Moreover, as courts have routinely determined, the SFIP preemption language in Article IX,
*supra*, is broad enough to cover actions of entities like Administrative Strategies that are utilized
by FEMA to adjust flood insurance claims during the claims handling process.  *See, e.g.*, *Pepe v.
Fid. Nat. Prop. & Cas. Ins. Co.*, 2011 WL 4916290, at *3 (D.N.J. Oct. 17, 2011) ("[E]xtra-

contractual and negligence claims are barred against all persons involved in the claims

adjustment process. . . ."); *Brooks v. Foglio*, 2013 WL 3354430, at *3 (D.N.J. July 2, 2013)

(stating that the NFIA preempts state law claims against adjusters through the language in Article

IX of the SFIP); *see also Skinner v. Colonial Claims, LLC*, 2018 WL 2572782, at *5 (N.D. Ala.

June 4, 2018) (finding claims against an adjuster "arising from the handling of any claim"

preempted by federal law); *Moffett v. Computer Scis. Corp.*, 457 F. Supp.2d 571, 583 (D. Md.

2006) (holding that fraud and tortious interference claims against insurance adjusters were

expressly preempted).

Here, Plaintiffs' claims against Administrative Strategies are based on its handling of

Plaintiffs' SFIP claims.  *See, e.g.*, *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949 (6th Cir.

2002) (describing claims that were "in essence" based on the handling of SFIP claims).

Plaintiffs do not offer any argument or point to any case law to the contrary.  Accordingly, given

the unambiguous preemption provision in Article IX of Plaintiffs' SFIP, Plaintiffs' state tort

claims against Administrative Strategies are expressly preempted. Because Plaintiffs' state tort

claims against Administrative Strategies are preempted by federal law, the counts against it must

be dismissed with prejudice.[4]

---

[4] Given this result, Administrative Strategies arguments that the claims against it must be dismissed for failure to state a claim will not be addressed.

Further, Plaintiffs efforts (in an attempt to skirt around the preemption language in Article IX of the SFIP) to recast their state tort claims as arising out of the handling of flood insurance claims pursuant to a SFIP because they were preempted by federal law); *see also Sutor*, 2009 WL 2004375, at *5 ("Attempts to use the regulation's reference to federal common law as a basis for stating extra-contractual causes of action that are not expressly authorized by the NFIA or FEMA regulations amount to an impermissible re-labeling of state law claims that must be rejected.").

An appropriate order follows.

**BY THE COURT:**


*/s/ Wendy Beetlestone*
-----------------------------------
**WENDY BEETLESTONE, J.**